IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-Cr-Seitz

UNITED STATES OF AMERICA,

   Plaintiff,

vs.

JOSEPH RUSSO and DOREEN RUSSO,
et al,

   Defendants.
_____/

NIGHT BOX
FILED

DEC 03 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

**JOINT MOTION FOR PRODUCTION OF, OR IN THE ALTERNATIVE,
JUDICIAL REVIEW OF, GRAND JURY TRANSCRIPTS**

The Defendants, by and through undersigned counsel, and pursuant to *Federal Rules of Criminal Procedure* 6(e)(3) and the further points and authorities set forth *infra*, hereby move this Honorable Court to enter an Order requiring the production of all Grand Jury transcripts related to the Second Superseding Indictment, or, in the alternative, judicial review of same. The following is set forth in support:

> The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.
>
> *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)



### The Grand Jury Clause and its crucial importance

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury". This is far more than a mere hollow protection, since the Grand Jury "serv[es] as a kind of buffer or referee between the Government and the people". *United States v. Williams*, 504 U.S. 36, 47, 112 S.Ct. 1735,1742 (1992). Further, "it is axiomatic that the grand jury sits ... to assess whether there is adequate basis for bringing a criminal charge". *United States v. Williams*, *supra*, and therefore "historically protects citizens against unfounded criminal prosecutions". *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974).

### Dismissal of an Indictment pursuant to the Grand Jury Clause

The Supreme Court recently recognized an exception to the general rule that "a District Court may not dismiss an indictment for errors in grand jury proceedings", in circumstances where it can be shown that **such errors prejudiced the defendants**". *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) (emphasis added). In *Nova Scotia,* the court announced the standard that courts should apply whenever dismissal is sought for a nonconstitutional error:

> The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless.
> *Id.* 108 S.Ct. at 2378.

LAW OFFICES OF STEVEN M. POTOLSKY, P.A., 100 S.E. 2ND STREET, SUITE 3550, MIAMI, FLORIDA • (305) 530-8090

Inherent in the principles mentioned above is the requirement that the Grand Jury act as an independent unit and not simply rubber-stamp the wishes of the prosecutor or the Court. The Eleventh Circuit very recently discussed two detailed scenarios that would require **dismissal** of an Indictment as violative of the Grand Jury Clause:

> ... if a prosecutor simply drew up an "indictment," had a grand jury foreperson sign it, and then used it to charge the defendant with a criminal offense, we would dismiss the "indictment" out of hand as violative of the Fifth Amendment. This is because the "indictment" would in no sense be the product of a constitutionally required grand jury proceeding.
>
> So, too, would we dismiss an indictment that was issued by a "kangaroo grand jury" -- one whose deliberations were so overborne by a prosecutor or judge that the indictment was, in effect, the prosecutor's or judge's handiwork, and not the result of a considered judgment by an independently functioning grand jury. (citations omitted)

*United States v. Sigma Intern., Inc.* 244 F.3d 841 (11th Cir. 2001)

The danger inherent in a "kangaroo grand jury" was recognized a quarter century ago, by the late William J. Campbell, a distinguished former chief district court judge from Chicago:

> Today, the grand jury is the total captive of the prosecutor who, if he is candid, will concede that he can indict anybody, at any time, for almost anything, before any grand jury.

Judge William J. Campbell, *Eliminate the Grand Jury,* 64 Journal of Criminal Law and Criminology 174 (1973).

In *Sigma*, the Court conducted an extensive and enlightening analysis of the Grand Jury Clause. To begin with, the Court noted that "Supreme Court cases have reaffirmed the importance of the Fifth Amendment's Grand Jury Clause, implying that courts have the authority to dismiss an indictment that is

3

the product of a grand jury process so flawed that the grand jury's independence has been infringed". *Id*, at 857. Importantly, a Grand Jury must be not only "independent", but also **"informed"**. *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). Therefore, to whatever extent an Indictment is the product of a **mis**informed Grand Jury, constitutional issues arise and dismissal may be appropriate. **This is precisely the claim that the Defendants make herein**.

### Disclosure of Grand Jury transcripts or judicial review to support dismissal of an Indictment

*Federal Rules of Criminal Procedure* 6(e)(3)(C)(ii) provides that "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made ... when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury".

Without such disclosure, the Defendants will be denied any **meaningful** opportunity to challenge the propriety of the Grand Jury's actions and the resulting Second Superseding Indictment. See *Sigma Intern,* 244 F.3d at 855 ("the only evidence on which a court can rely in determining the validity of the indictment is the cold record of the grand jury proceedings"). See also, *United States v. Sigma Intern., Inc.*, 196 F.3d 1314, 1320 (11th Cir. 1999)("A court may also review a grand jury investigation to ensure that an independent **and informed** grand jury returned the indictment")(emphasis added).

Further, it is no answer here to say that the ultimate trial on the merits will serve to vindicate any violation that may have occurred, since "the Indictment

4

Clause insulates the innocent from the ordeal of a criminal trial". *United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993). See also, *United States v. Filippatos*, 307 F.Supp. 564, 565 (S.D.N.Y.1969)("... there can be no doubt that an indictment by a grand jury places on a defendant the heavy burdens of expending time, energy, and capital in the defense of his case and almost certainly of meeting the social opprobrium that shadows him while under the charge of the indictment"), *United States v. Garnes*, 156 F.Supp. 467, 470 (D.C.N.Y. 1957)("The grand jury provides an additional protection to citizens ... to secure that innocent individuals are not subjected unnecessarily to the social and personal distress of a criminal trial").

Considerations of judicial economy also favor disclosure or judicial review here, since "... trial of charges brought without a sufficiently solid basis is wasteful of the courts' time and an improper abuse of public funds". *United States v. Filippatos, supra*, at 565.

**Specific grounds for the requested disclosure**

We must emphasize that we do not make this request lightly or in boilerplate fashion, but only after careful analysis and research of certain matters that strongly justify the requested relief. Each of these are now set forth:

1. **Indictment of Doreen Russo – "should have known"**

The Defendants have a good faith basis to believe that Defendant Doreen Russo was indicted based upon the Grand Jury's misunderstanding and/or misapplication of the **knowledge** requirement of 18 U.S.C. § 1957, which makes it a Federal crime for any person to "knowingly engage[ ] or attempt[ ] to engage

5

in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity....". The *mens rea* element of the statute requires that the defendant know that the property is "criminally derived," but it does not require that the defendant know that the property was derived from "specified unlawful activity".

In various conversations with Government counsel, it appears that the Government's case against Doreen Russo lacks proof of actual knowledge and instead hinges upon a *mens rea* of "should have known". Similar considerations may very well exist as to Defendant Joseph Russo.

In *United States v. Messer*, 139 F.3d 895 (4th Cir. 1998), the Fourth Circuit stated that "to sustain a conviction for money laundering ..., the Government must prove beyond a reasonable doubt that [the accused] had **actual knowledge** that the transactions ... involved proceeds from illegal activities. Generally, one cannot be convicted based upon what one **should have known**" Similarly, in *United States v. Gabriele*, 63 F.3d 61 (1st Cir. 1995), the jury was instructed in a § 1957 prosecution that the "knowledge" element was not met merely by a finding that the defendant "might have known," **"should have known,"** or "could have known". On appeal, the First Circuit held that "the district court instruction in all respects delineated the appropriate 'knowledge' element for application by the jury". See also, *United States v. Heaps*, 39 F.3d 479, 484 (4th Cir. 1994)(the companion and closely related statute, 18 U.S.C § 1956(a)(1), "requires the Government to prove that the defendant had 'actual subjective knowledge' that the money used in a money laundering transaction

6

was derived from an unlawful source. **The defendant may not be convicted on just what he should have known**") (all emphasis added).

The Eleventh Circuit has likewise noted that the statute's knowledge element requires the Government to "prove that the defendant **knew** that the property was obtained from a criminal offense". *United States v. Baker*, 19 F.3d 605 (11th Cir. 1994) (emphasis added). Substantial confusion and danger exists, however, in situations where – as here – the Government's claim is that the Defendant **"should have known"** that the property was tainted.

Numerous courts have directly confronted the grave risk of confusion inherent in the legal concept of "willful blindness", in particular, the substantial danger that an improper "should have known" standard will be applied. See, *i.e.*, *United States v. Cunan*, 152 F.3d 29, 40 (1st Cir. 1998)("the danger of an improper willful blindness instruction is the possibility that the jury will be led to employ a negligence standard and convict a defendant on the impermissible ground that he **should have known** an illegal act was taking place"), *United States v. Wert-Ruiz*, 228 F.3d 250, 255 (3rd Cir. 2000)("willful blindness" instruction "must be tailored ... to avoid the implication that a defendant may be convicted simply because he or she **should have known** of facts of which he or she was unaware. **Willful blindness is not to be equated with negligence or a lack of due care**"). See also, *United States v. Ebert*, 178 F.3d 1287 (4th Cir. 1999)("The doctrine of deliberate ignorance does not allow a jury to impute actual knowledge of the operative fact to a defendant just because he **should have known** of the existence of that fact. Nor does the doctrine allow a jury to attribute

7

actual knowledge to a defendant because he acted with reckless disregard to the possibility of the fact's existence")(citations omitted), *United States v. Pettigrew*, 77 F.3d 1500 (5th Cir. 1996)(Jury instruction permitting conviction for money laundering if defendant knowingly engaged in transaction and funds involved were, in fact, criminally derived, without requiring any showing by government that defendant knew that funds in question were criminally tainted, was reversible error)(all emphasis added).

**Accordingly, to whatever extent the Grand Jury indicted Doreen Russo and/or Joseph Russo because it was erroneously instructed on, and/or misapplied, a "should have known" standard, the Grand Jury Clause has been violated**. As stated above, the only method for the Defendants to establish this scenario is through production and analysis of the Grand Jury transcripts, or judicial review of same.

2.  **Incorrect transcript of the single taped conversation involving Russo**

    Notwithstanding the fact that hundreds of hours of wiretap evidence were compiled during the course of this investigation, there has been but a single, brief taped conversation involving Defendant Joseph Russo, where he actually shows **lack of knowledge** of the unlawful activity at issue[1].

    The Government, however, took the position at Russo's detention hearing that this conversation was one of three items of evidence that showed his

---

[1] In that recorded conversation, taking place on January 7, 2000, Defendant Joseph Russo is discussing with lead defendant John Mamone the fact that a search warrant was being executed at the check cashing business, and **he states that "there's nothing illegal going on there, I don't think". Mamone then reassures him "there ain't nothin' goin' wrong".**

knowledge of the unlawful source of the funds[2]. It is logical to then assume that this evidence was presented to the Grand Jury that returned the Second Superseding Indictment, which brought the Defendants into the case.

The fatal problem with the Grand Jury's reliance upon this evidence is that the transcript prepared by the Government is wrong – **purportedly incriminating statements attributed to Defendant Joseph Russo were not made by him, but rather by lead co-defendant John Mamone**. Given the Government's position about the importance of this evidence, any reliance by the Grand Jury would cast "grave doubt that the decision to indict was free from such substantial influence", and would require dismissal.

### 3. Count 53 - $142,000 from Ritz Carlton

Count 53 alleges an offense based upon "Deposit of check payable to Doreen Russo into account of Doreen Russo at First Union National Bank", on October 10, 2000. This check was in the amount of one hundred and forty two thousand dollars ($142,000) and was a refund issued by Ritz Carlton, an unquestionably lawful enterprise with lawful assets, of a deposit made on a condominium unit to be purchased by the Russos.

Accordingly, it seems clear that the Grand Jury misapplied the law in indicting on Count 53, and if so, this is strong circumstantial evidence that the Grand Jury Clause has been violated on other counts as well.

---

[2] More specifically, when Agent Wise was asked the dispositive question "**what evidence is there that Joe Russo knew that the money that went into is wife's account was illegally obtained money?**", he limited his answer to three things 1) the tape recorded phone conversation, 2) the fact that funds were deposited into Russo's wife's account rather than "directly to him", and 3) the fact that Russo and Mamone were partners in the check cashing store, but the business was put in their wives' names.

These circumstances led Agent Wise to conclude that "circumstantially, it appears to me that they were trying to conceal something". See Joseph Russo detention hearing, *supra*, at p. 25-26.

## CONCLUSION

Substantial grounds exist *sub judice* to believe that the Grand Jury proceedings that led to the Defendants' indictment were fatally flawed. Disclosure or judicial review of the Grand Jury transcripts under these circumstances is specifically provided for pursuant to *Federal Rules of Criminal Procedure* 6(e)(3)(C)(ii), and is necessary to guarantee that the Defendants' Fifth Amendment Grand Jury rights were not violated.

Accordingly, such disclosure or judicial review should be ordered.

**WHEREFORE**, the Defendant respectfully requests that this Motion be granted and the Court enter an Order providing appropriate relief.

Respectfully submitted,

| | |
|---|---|
| JAYNE C. WEINTRAUB, Esq. | STEVEN M. POTOLSKY, P.A. |
| NationsBank Tower, Suite 3550 | NationsBank Tower, Suite 3550 |
| 100 S.E. 2nd Street | 100 S. E. 2nd Street |
| Miami, FL 33131 | Miami, FL 33131 |
| (305) 374-1818 | (305) 530-8090 |
| By: *[signature]* For | By: *[signature]* |
| Jayne C. Weintraub, Esq. | Steven M. Potolsky, Esq. |
| Florida Bar No. 320382 | Florida Bar No. 380601 |

LAW OFFICES OF STEVEN M. POTOLSKY, P.A., 100 S.E. 2ND STREET, SUITE 3550, MIAMI, FLORIDA • (305) 530-8090

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by mail this __3__ day of December, 2001 to **Brian McCormick, Esq. and Diana Fernandez, Esq., Assistant United States Attorneys,** 500 E. Broward Blvd., Suite 700, Ft. Lauderdale, FL 33394 and all defense counsel on the attached Service List.

By: _____
**Steven M. Potolsky, Esq.**

LAW OFFICES OF STEVEN M. POTOLSKY, P.A., 100 S.E. 2ND STREET, SUITE 3550, MIAMI, FLORIDA • (305) 530-8090