IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-Cr-Seitz

UNITED STATES OF AMERICA,

    Plaintiff,

VS.

JOSEPH RUSSO,
et al,

    Defendant.

_____/

NIGHT BOX
FILED

DEC 0 3 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## MOTION TO SUPPRESS/EXCLUDE POST-ARREST STATEMENTS

The Defendant, by and through undersigned counsel, and pursuant to *Federal Rules of Criminal Procedure* 12(b)(3), *Federal Rule of Evidence* 403, and the points and authorities set forth *infra*, hereby moves this Honorable Court to enter an Order suppressing/excluding certain alleged post-arrest statements. The following is set forth in support:

### INTRODUCTION

The Defendant and his wife Doreen were arrested at their home on August 21, 2001, pursuant to warrants. Certain statements were allegedly made by the Defendant prior to leaving the residence, and certain additional statements were allegedly made while en route to the United States Marshal's Service, **after** the Defendant was advised of his Miranda rights and refused to waive same.

This Motion seeks **exclusion** of the at-home statements and certain of the later statements on grounds of legal relevancy (Federal Rule 403), and **suppression** of all of the later statements on grounds that the Defendant was subjected to the "functional equivalent" of interrogation after he invoked his rights. An evidentiary hearing is probably not required as to the objection on Rule 403 grounds, and may only be required as to the subsequent statements if the Government disputes the below-stated factual basis drawn from lead case Agent Wise's report.

**EXCLUSION OF CERTAIN ALLEGED STATEMENTS UNDER RULE 403**

1. According to the report authored by lead case agent Ron Wise, as the Russos were leaving their home with the Agents, the Defendant "looked at his wife ... and apologized for 'this', and Doreen Russo told him that an apology was not necessary".

2. According to the same report, the Defendant later told Agent Wise that his wife "knows nothing about money, and that she wrote the checks because he told her to do so".

3. Federal Rules of Evidence 403 provides that **even relevant evidence** "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"[1].

---

[1] Certain other alleged statements would also fall under Rule 403, but since it is unclear whether the prosecution would attempt to introduce them at trial, it seemed preferable to defer litigation of those matters until such time as the necessity might be apparent.

2

4. In this balancing, the probative value of the alleged statements must be evaluated against the proper background. The Defendant knew from various *bona fide* sources that he was about to be indicted. His wife was served with a Grand Jury subpoena several months prior[2], he had consulted with counsel, and he was legitimately distraught that his loving wife of thirty-four years was probably going to be indicted as well. In fact, according to Agent Wise's report, one of the first questions that the Defendant asked him was whether the agents "intended to arrest his wife ... in addition to him". His main concern was not his own welfare, but that of his wife.

5. Viewed in their totality, the surrounding circumstances indicate that the probative value of these statements is far outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury".

6. This is particularly true because the Defendant's alleged statement(s) exculpating his wife began with his observation that "**Doreen ... had been indicted and arrested only as a tactic to force him to plead guilty to his charges**". He then added that "**he knows the routine will be that if he pleads guilty, she will go free**". It was only at that point that he allegedly stated that "she knows nothing about money, and that she wrote the checks because he told her to do so".

7. In light of the irrefutable evidence that the Defendant believed his wife was indicted only to pressure him to plead guilty, and that she would not be prosecuted in that event, it is clear that the statements which

---

[2] Testimony of Agent Ron Wise, Russo detention hearing, August 29, 2001, p. 16-17.

immediately followed may not be probative of anything other than the Defendant's love for his wife and his desire to protect her.

8. Further "confusion of the issues, or misleading the jury" would flow from application of the "rule of completeness" – if the referenced statements are admitted at trial, it will be necessary in order to place the statements in their proper context to cross-examine the Agent about the comments that preceded them, and establish the Defendant's reason(s) for believing as he did.

## SUPPRESSION OF ALLEGED STATEMENTS <u>AFTER</u> REFUSAL TO WAIVE RIGHTS - *RHODE ISLAND V. INNIS*

1. According to Agent Wise's report, the Defendant was arrested at approximately 7:05 a.m. Shortly thereafter, Agent Wise advised the Defendant of his *Miranda* rights "reading from Document 5661 (Rev. 8-82)", and Russo indicated that he understood the rights. While all parties were still in the residence, undersigned counsel Weintraub spoke via telephone with Doreen Russo and requested to speak with Agent Wise. This request was related to Agent Wise by Agent VanAuken, but Agent Wise refused to speak with Ms. Weintraub. The Defendant and his wife were subsequently transported to the North Miami Beach FBI Office in separate vehicles for processing. En route, Agent Wise showed the Defendant "a copy of the arrest warrant which described the charges against him". At approximately 8:20 a.m., the Defendant arrived at the FBI Office and was "offered a waiver of rights

4

form **which he declined to sign**" (emphasis added). At approximately 9:45 a.m., the Defendant was transported to the United States Marshal's office in Miami.

2. During this trip, **without any request from the Defendant, and notwithstanding his prior refusal to waive *Miranda*, Agent Wise again showed him a copy of the arrest warrant**. This time, the Defendant responded by asking about the evidence against him, Agent Wise gave him further factual information, and allegedly incriminating statements directly followed. Documentation of the alleged statements appears in the report written by Agent Wise, attached and incorporated hereto as Exhibit A.

3. The conduct challenged in this pleading concerns the **second** time that Agent Wise provided the Defendant with the arrest warrant, which was **after** he had refused to waive his *Miranda* rights. This action, in the immediate wake of the Defendant's refusal to submit to interrogation, was the "functional equivalent" of interrogation and improper under *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682 (1980).

4. In *Innis*, the Court stated that conduct or action(s) that the police should know are "reasonably likely to evoke an incriminating response" from a suspect amounts to interrogation. *Innis, supra.* To guide the lower courts in the pertinent inquiry, the Supreme Court recognized in a footnote that "the intent of the police may well have a bearing on whether the police should have known that their words or actions were

reasonably likely to evoke an incriminating response. In particular, **where a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect**". *Id*, n. 7 (emphasis added).

5. "Determining whether particular ... practices amount to interrogation depends on the circumstances of each case, particularly whether the statements are objectively and reasonably likely to result in incriminating responses by the suspect, as well as the nature of the police statements and the context in which they are given". *United States v. Allen*, 247 F.3d 741, 765 (8th Cir. 2001)(citations omitted). See also, *United States v. Payne*, 954 F.2d 199, 203 (4th Cir. 1992)("whether descriptions of incriminating evidence constitute the functional equivalent of interrogation will depend on circumstances that are too numerous to catalogue. As a result, substantial deference on the question of what constitutes interrogation must be paid to the trial courts, who can best evaluate the circumstances in which such statements are made and detect their coercive aspects").

6. In *United States v. Orso*, 266 F.3d 1030 (9th Cir. 2001), the Ninth Circuit confronted a situation where the detective "[d]uring the car ride, and without giving the Miranda warnings ... engaged Orso in several minutes of detailed discussion regarding the evidence against her, the witnesses against her, and the statutory penalties for the crime of

which she was suspected. Indeed, he went so far as to make up some of the evidence which he said existed against her". Even though the detective "preceded his comments by admonishing her not to speak", the Ninth Circuit was "persuaded that he should have known that it was reasonably likely his comments would cause her to respond".

7. Similar to the case at bar, the *Orso* Court observed that "[i]t is hard to see any purpose for the long and detailed discussion in the car, especially his false statement of the evidence against Orso, other than to elicit incriminating responses from her". Accordingly, the Court held that Orso was subjected to "interrogation", and the subsequent statements were suppressed.

8. As in *Orso*, the **only** purpose to be served by the second provision of the arrest warrant, which contained a "detailed discussion regarding the evidence against [him]" – after the Defendant had refused to waive his rights – was to "elicit an incriminating response". And it did.

## CONCLUSION

On both of the above-stated grounds, the Defendant's alleged post-arrest statements should not be admitted at trial.

**WHEREFORE**, the Defendant respectfully requests that this Motion be granted and the Court enter an Order excluding/suppressing his alleged post-arrest statements.

7

Respectfully submitted,

| | |
|---|---|
| JAYNE C. WEINTRAUB, Esq.<br>NationsBank Tower, Suite 3550<br>100 S.E. 2nd Street<br>Miami, FL 33131<br>(305) 374-1818 | STEVEN M. POTOLSKY, P.A.<br>NationsBank Tower, Suite 3550<br>100 S. E. 2nd Street<br>Miami, FL  33131<br>(305) 530-8090 |
| By: *[signature]* For<br>Jayne C. Weintraub, Esq.<br>Florida Bar No. 320382 | By: *[signature]*<br>Steven M. Potolsky, Esq.<br>Florida Bar No. 380601 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by mail this **3** day of December, 2001 to **Brian McCormick, Esq. and Diana Fernandez, Esq., Assistant United States Attorneys,** 500 E. Broward Blvd., Suite 700, Ft. Lauderdale, FL 33394 and all defense counsel on the attached Service List.

By: *[signature]*
**Steven M. Potolsky, Esq.**